# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **ARGONAUT INSURANCE COMPANY,** | **CASE NO.:** |
| **Plaintiffs,** | **HON.** |
| vs. | |
| **CITY OF WARREN, ANWAR KHAN, SHAWN JOHNSON, and LAWRENCE GARNER.** | **COMPLAINT FOR DECLARATORY RELIEF** |
| **Defendants.** | |

Plaintiff Argonaut Insurance Company (AIC), for its Complaint against Defendants City of Warren, Anwar Khan, Shawn Johnson, and Lawrence Garner (collectively, Defendants), alleges and states as follows:

## NATURE OF THE ACTION

1.     This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  AIC seeks a determination that it has no duty to defend or indemnify Defendants under Employment Practices Liability (EPL) insurance policies issued to the City of Warren by AIC with respect to an underlying lawsuit brought by DeSheila Howlett (Howlett) (the Lawsuit) against Defendants.  In the alternative, AIC seeks a determination that the allegations

made by Howlett in the Lawsuit constitute separate occurrences under the AIC EPL Policies.  The Lawsuit involves Howlett's allegations of ongoing, continuous since the commencement of her employment in 2006, discrimination, unlawful employment practices, and creating a hostile work environment on the basis of race and/or gender, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983.

## PARTIES

2.     Plaintiff AIC is an Illinois corporation with its principal place of business in Chicago, Illinois.

3.     Defendant City of Warren (the City) is a city located in Macomb County, Michigan.

4.     Defendant Anwar Khan (Khan) is an individual residing in Roseville, Michigan.

5.     Defendant Shawn Johnson (Johnson) is an individual residing in Sterling Heights, Michigan.

6.     Defendant Lawrence Garner (Garner) is an individual residing in Warren, Michigan.

## I. JURISDICTION AND VENUE

7.  In this action, AIC seeks a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57, that it has no duty to defend or indemnify Defendants in connection with a claim asserted against it by Howlett in the Lawsuit, as more particularly described below.

8.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), because this action is between citizens of different states and the amount in controversy exceeds $75,000.

9.  Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because the AIC Policies were issued to an insured that is located within the Eastern District of Michigan, and all or a substantial portion of the events, errors, acts or omissions as alleged in the Lawsuit giving rise to AIC's claim occurred within the Eastern District of Michigan.

## II. THE UNDERLYING SUIT

10.  On April 26, 2017, Howlett filed her First Amended Complaint against Defendants in the Eastern District of Michigan (the Lawsuit). The matter is pending before Judge Terrence G. Berg. *See*, Exhibit A – First Amended Complaint.

11. The Lawsuit asserts six counts against Defendants:

- Count I: Discrimination Based on Race and Gender - Hostile Work Environment (pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.)

- Count II: Violation of Fourteenth Amendment right to Equal Protection (pursuant to 42 U.S.C. § 1983)

- Count III: Violation of Fourteenth Amendment right to Due Process (pursuant to 42 U.S.C. § 1983)

- Count IV: City of Warren *Monell* Liability (pursuant to 42 U.S.C. § 1983)

- Count V: Conspiracy Invidious Racial Animus (pursuant to 42 U.S.C. § 1985)

- Count VI: Violation of the Right to Make and Enforce Contracts (pursuant to 42 U.S.C. § 1981)

12. On September 16, 2019, Judge Berg issued an Order granting in part and denying in part Defendants' Motion for Summary Judgment, denying Howlett's Motion for Partial Summary Judgment, and dismissing certain individuals (the Court's Order). *See*, Exhibit B – Order.

13. In regard to Counts III, V, and VI, the Court granted summary judgment. *Id*.

14. In regard to Count II, the Court granted summary judgment as to claims pertaining to events occurring before April 21, 2014 but denied summary

judgment as to all claims pertaining to events occurring after April 21, 2014 against Defendants Khan, Johnson, and Garner. *Id*.

15.     In regard to Counts I and IV, the Court denied summary judgment. *Id*.

16.     Therefore, the following Counts for which Defendants seek defense and indemnification remain:

- Count I against the City, Kahn, Johnson, and Garner

- Count II against Kahn, Johnson, and Garner as to all claims pertaining to events occurring after April 21, 2014

- Count IV against the City

17.     In bringing the Lawsuit, and according to the Court's Order, Howlett makes certain allegations against the City, Kahn, Johnson, and Garner. *See*, Ex. A; Ex. B.

18.     In the Lawsuit, Howlett alleges that she began her employment with the City on August 10, 2006 as a police officer and that she was the first African American police officer ever to be employed by the City working there for 11 years. *See*, Ex. A at ¶¶ 4-5.

19.     Howlett further alleges that, since the beginning of her employment in 2006, she was generally subjected to "inappropriate, insulting, demeaning, racially stereotypical, and offensive comments, jokes, statements, conversations, and other conduct by her supervisors and co-officers while other similarly-situated white

police officers have suffered no such treatment and/or conduct," and that the City "has a notorious history of racially discriminatory practices against African Americans." *Id.* at ¶¶ 11-12.

20.     Howlett further alleges that the City's "custom, policy, and practice of racial discrimination has been publicly evidenced, for example, through racially disparaging and insulting comments reportedly made by the current mayor of the City of Warren." *Id.* at ¶ 12.

21.     Howlett further alleges that the City's "customs, practices, and policies of unlawful racial and gender discrimination by the Defendant City of Warren, particularly in its police department, have also been evidenced by its failure to correct, discipline, retrain and/or supervise the individual Defendants herein, the Warren Police Department (Department) supervisors and Plaintiff's co-officers, despite the Department's knowledge-through notice and knowledge provided to the highest level and final policy makers within the Department-of the following series of events, among others, perpetrated against Plaintiff, and widespread throughout the Department during the entire time of Plaintiff's employment therein…"   Howlett makes numerous allegations of specific instances that she believes evidences a series of racial and gender discrimination.  *Id.* at ¶ 13.

22.     Howlett alleges that "over the ten year period of her employment as a Warren police officer," she "repeatedly brought this unlawful and hostile racial and

gender discriminatory environment and these unlawful and discriminatory acts to the attention of the management and policy makers within the City of Warren Police Department. *Id.* at ¶ 16.

23.     Howlett further alleges that "notwithstanding their knowledge of this unlawful racial and gender discriminatory environment that [Howlett] was subjected to, Defendants, including the City of Warren, failed to take any action to address [Howlett's] complaints or correct the aforementioned unlawful conduct." *Id.* at ¶ 17.

24.     More specifically, Howlett testified that she believes she was denied a light-duty reassignment when she was injured in 2011 when several of her fellow officers were allowed light-duty assignments. *See*, Ex. B at p. 14.   Howlett testified that she believes she was denied light-duty assignment because of her race. *Id.*

25.     In regard to Defendant Khan, Howlett alleges that the wrongful conduct began as early as 2006, shortly after Howlett was hired and was completing field training. *See*, Ex. A at ¶ 13(4); Ex. B at p. 7.  Howlett alleges that Khan made disparaging comments about women in the workforce and failed Plaintiff at Phase III of field training. *Id*.  Howlett claims that Khan failed her without justification because she is a woman. *Id*.  Howlett also alleges that, as recently as 2016, Khan harassed her by pulling her over when she was on the way

to a crime scene and falsely alleged that she was driving recklessly. *Id*. She claims that this was further evidence of Khan's animus against her based on her sex. *See*, Ex. B at p. 8.

26.    In regard to Defendant Johnson, Howlett alleges that she began working with Johnson in March 2015 when she was transferred to the Special Victims Department. *See*, Ex. B at p. 15.  Howlett claims that Johnson harassed her by suggesting she was his "slave girl" and making racist remarks toward her, including comparing her to the gorilla depicted on the label for "Gorilla Glue." *Id*. at p. 16.  After a complaint was made, Johnson took responsibility for his actions and was disciplined and received diversity training in 2017. *Id*. at 18.

27.    In regard to Defendant Garner, Howlett alleges that in 2016, at which time Garner was a supervisor, he asked Howlett if she was still having problems with Johnson after she received a promotion requiring her to work in the same division as Johnson again. *See*, Ex. B at p. 52.  Despite being informed that the problems with Johnson were apparently ongoing, Garner moved Howlett to Johnson's side of the office where Howlett was then subjected to more harassment from Johnson. *Id*. at p. 52.

## V.   THE EPL INSURANCE POLICIES

28.   AIC issued Employment Practices Liability policies with policy periods of one year each from July 1, 2012 to July 1, 2017 with policy numbers as follows (the AIC EPL Policies) (*See*, Exhibit C):

- Policy No. EP-4628886-00      From 7/1/2012 To 7/1/2013

- Policy No. EP-4628886-01      From 7/1/2013 To 7/1/2014

- Policy No. EP-4628886-02      From 7/1/2014 To 7/1/2015

- Policy No. EP-4628886-03      From 7/1/2015 To 7/1/2016

- Policy No. EP-4628886-04      From 7/1/2016 To 7/1/2017

29.   The AIC EPL Polices provide coverage as follows[1]:

## A. INSURING AGREEMENT

We will pay on behalf of the insured those sums in excess of the "retained limit" that the Insured becomes legally obligated to pay as damages resulting from an "employment practices wrongful act" to which this insurance applies. However, we will have no duty to defend the insured against any "suit" seeking damages because of an "employment practices wrongful act" to which this insurance does not apply. We may, at our discretion, investigate any incident that may result from an "employment practices wrongful act".

1. This coverage applies only if:

    a. The "employment practices wrongful act" is caused by

---

[1] AIC issued policies of insurance to the City of Warren incepting on July 1, 2012 through July 1, 2017.  Commencing in the policy year 2012 through 2013, the EPL form number was AG-EP RLIO-001.  For the year 2013 through 2014, the EPL form number was EPRLIO 001 0413.  For the years 2014 through 2017, the form was EPRLIO 002 0413.  The pertinent language is the same or similar in each of the AIC EPL Policy forms.

an "occurrence" that takes place in the "coverage territory"; and;

    b. Prior to the "policy period", no Insured knew or had reason to know that the "employment practices wrongful act" had occurred, in whole or in part.

    c. If any Insured knew or had reason to know, prior to the "policy period" that the "employment practices wrongful act" had occurred, then any continuation, change or resumption of such "employment practices wrongful act" will be deemed to have been known prior to the "policy period".

2. An "employment practices wrongful act" will be deemed to have been known to have occurred at the earliest time when any insured:

    a. Reports all, or any part, of the "employment practices wrongful act" to us or to any other insurer;

    b. Receives written or verbal demand or "claim" for "loss" because of "employment practices wrongful act"; or

    c. Becomes aware by any other means that an "employment practices wrongful act" has occurred.

    The entire "employment practices wrongful act" will be considered to have occurred on the date of the first act, error or omission.

3. The amount we pay for "loss" and "loss adjustment expenses" is limited as described in **Section IV** - **Limits of Insurance.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Defense and Supplementary Payments.**

*See*, Ex. C at p. 1-2 of form AG-EP RLIO-001, p. 1-2 of form EPRLIO 001 0413, and p. 1-2 of form EPRLIO 002 0413.

30.    The AIC EPL Policies cover damages resulting from an "employment practices wrongful act" to which the AIC EPL Policies apply. *Id.*

31.     As indicated in the policy language above, the AIC EPL Policies do not apply if an "Insured" knew or had reason to know that the "employment practices wrongful act" had occurred, in whole or in part, prior to the "policy period." *Id.*

32.     "The entire 'employment practices wrongful act' will be considered to have occurred on the date of the first act, error or omission." *Id*.

33.     Additionally, if any "Insured" knew or had reason to know, prior to the "policy period," that the "employment practices wrongful act" had occurred, then any continuation, change or resumption of the "employment practices wrongful act" will be deemed to have been known prior to the "policy period." *Id*.

34.     The first "policy period" begins on July 1, 2012 - meaning if an "Insured" knew or had reason to know that "the employment practices wrongful act," or the "first act, error or omission," including "any continuation, change or resumption of the "employment practices wrongful act," had occurred before July 1, 2012, coverage does not apply with regard to the AIC EPL Policies. *Id*.

35.     The AIC EPL Polices define an "occurrence" as "an event, including continuous or repeated exposure to substantially the same generally harmful conditions." *See*, Ex. C at p. 19 of form AG-EP RLIO-001, p. 18 of form EPRLIO 001 0413, and p. 18 of form EPRLIO 002 0413.

36.     The AIC EPL Policies describe how the Limits of Insurance apply as
follows:

**SECTION IV – LIMITS OF INSURANCE**

The Limits of Insurance in this policy apply in addition to the "retained limit."

The following paragraphs further describe how the Limits of Insurance and "Retained Limit" apply:

…

**B. LIMITS OF INSURANCE**

…

2.  Subject to the Limits of Insurance stated in the Declarations, we will pay for "loss" covered under this policy only after the "retained limit" has been exhausted because of payments for judgments, settlements and "loss adjuster expense(s)" of "claims" or "suits" and "loss adjustment expenses."  The "retained limit" stated in the Declarations applies:

    a.  Only to "loss" for "occurrences" of "employment practices wrongful act(s)" covered under the policy;

    b.  Separately to each "occurrence" or series of continuous, repeated or related "occurrences," of "employment practices wrongful act(s)," and

    c.  To "loss adjustment expenses" associated with "claims" or "suits" of "employment practices wrongful act(s) for amounts within the "retained limit."

    …

5.  In determining the Limit of Insurance that applies, all such acts, errors or omissions committed by one or more insureds that are substantially the same or are in any way directly or indirectly related – either logically, causally or temporally – shall be deemed to constitute one "Employment Practices Wrongful Act,"

12

regardless of the number of "claims" or claimants.  The entire "Employment Practices Wrongful Act" will be deemed to have occurred on the date of the first act, error or omission.

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the "policy period" shown in the Declarations, unless the "policy period" is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the preceding period for purposes of determining the limits of insurance.

*See*, Ex. C at p. 10-11 of form AG-EP RLIO-001, p. 10-11 of form EPRLIO 001 0413, and p. 10-11 of form EPRLIO 002 0413.

37.    On February 28, 2018, AIC, via its authorized claims representative, acknowledged receipt of the Lawsuit and indicated that AIC would monitor the Lawsuit under a reservation of rights which was forwarded to and is in the possession of the City of Warren.

38.    On June 26, 2019, AIC, via its authorized claims representative, informed the City that AIC had not consented to any expenses in excess of the self-insured retention amount via an email to the City of Warren.

39.    On August 26, 2019, AIC, via its authorized claims representative, supplemented the February 28, 2018 Reservation of Rights Letter and the June 26, 2019 email by sending correspondence to the City indicating that any payments made by the City above the self-insured retention amount would be considered voluntary and would not be recoverable under the policy and again reserving its

rights to deny coverage for certain allegations. The August 26, 2019 correspondence was forwarded to and is in the possession of the City of Warren.

40.    AIC expressly reserves its ability to assert its rights and defenses as described in the Reservation of Rights correspondence dated February 28, 2018, June 26, 2019, and August 26, 2019 which were forwarded to and are in the possession of the City of Warren.

## COUNT I
## DECLARATORY RELIEF

41.    AIC incorporates by reference all prior allegations as if fully set forth herein.

42.    Under the terms of the AIC EPL Policies, coverage does not apply if an "Insured" knew or had reason to know that the "employment practices wrongful act" had occurred, in whole or in part, prior to the "policy period." *See,* Ex. C at p. 1 of form AG-EP RLIO-001, p. 1 of form EPRLIO 001 0413, and p. 1 of form EPRLIO 002 0413.

43.    Additionally, the entire "employment practices wrongful act" is deemed to have occurred on the date of the first act, error or omission. *Id*.

44.    The Lawsuit involves allegations of an act, error or omission that occurred as early as 2006, well before the "policy period." *See*, Ex. A at ¶; Ex. B at p. 6.

45.     Accordingly, AIC seeks a declaration by this Court that the City of Warren, Anwar Khan, Shawn Johnson, and Lawrence Garner, are not afforded coverage under the AIC EPL Policies with regard to the Lawsuit for the reasons stated in this Complaint for Declaratory Relief.

46.     In the alternative, should the Court decline to declare that the City, Kahn, Johnson, and Garner are not afforded coverage under the AIC EPL Policies with regard to the Lawsuit for the reasons stated in this Complaint for Declaratory Relief, AIC seeks a declaration that Howlett's allegations constitute separate occurrences under the AIC EPL Policies with separate retained limits.

## PRAYER FOR RELIEF

WHEREFORE, Argonaut Insurance Company prays for a declaration from this Honorable Court that the City of Warren, Lawrence Garner, Shawn Johnson, and Anwar Khan are not afforded coverage under the AIC EPL Policies in connection with the Lawsuit and Argonaut Insurance Company does not have a duty to defend and indemnify the City of Warren, Lawrence Garner, Shawn Johnson, and Anwar Khan in connection with the Lawsuit and for such other relief as this Honorable Court deems necessary, just, and proper in connection with the enforcement of the rights herein.  In the alternative, Argonaut Insurance Company prays for a declaration from this Honorable Court that the allegations contained in the Lawsuit constitute separate occurrences under the AIC EPL Policies with

separate retained limits and for such other relief as this Honorable Court deems

necessary, just, and proper in connection with the enforcement of the rights herein.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: December 23, 2019       By: */s/ Mark C. Vanneste*
                                        Robert E. Graziani (P25547)
                                        Mark C. Vanneste (P73001)
                                   450 W. Fourth Street
                                   Royal Oak, MI 48067
                                   Phone: (248) 645-1483
                                   Email: mv@h2law.com

                                   *Attorneys for Plaintiff*